**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

QUECTEL WIRELESS SOLUTIONS CO. LTD.,

*Plaintiff*,

v.

UNITED STATES DEPARTMENT OF DEFENSE, *et al.*,

*Defendants*.

Civil Action No. 26-1605 (PLF)

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

INTRODUCTION ..... 1

BACKGROUND ..... 2

A. Longstanding Concerns About Chinese Military-Civil Integration..... 2

B. Statutory Background ..... 3

C. The Department's Designation of Quectel as a "Chinese Military Company" ..... 6

D. This Litigation..... 9

STANDARD OF REVIEW ..... 9

ARGUMENT ..... 11

I. Defendants' Section 1260H Designation of Quectel Satisfies the APA..... 12

A. Substantial evidence supports the Department's designation of Quectel as a Chinese military company..... 12

B. Defendants' reconsideration process accords with statutory requirements. ..... 20

C. Plaintiff can show no unlawful withholding or unreasonable delay..... 22

II. The Department's Section 1260H Designation Procedure Did Not Prejudice Plaintiff. ..... 24

III. Defendants' Designation Was Not *Ultra Vires*. ..... 28

IV. Section 1260H Clearly Specifies Prohibited Conduct and Is Not Vague..... 29

V. Should There Be Error, Remand Without Vacatur Is the Appropriate Remedy. ..... 31

CONCLUSION..... 32

## TABLE OF AUTHORITIES

### CASES

*Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*,
988 F.2d 146 (D.C. Cir. 1993) .......... 32

*Allina Health Servs. v. Sebelius*,
746 F.3d 1102 (D.C. Cir. 2014) .......... 31

*Am. Bioscience, Inc. v. Thompson*,
269 F.3d 1077 (D.C. Cir. 2001) .......... 11

*Am. Fed'n of Gov't Emps., AFL-CIO, Local 446 v. Nicholson*,
475 F.3d 341 (D.C. Cir. 2007) .......... 21

*Archer W. Contractors, LLC v. U.S. Dep't of Transp.*,
45 F.4th 1 (D.C. Cir. 2022) .......... 10

*Bd. of Governors of Fed. Rsrv. Sys. v. MCorp Fin., Inc.*,
502 U.S. 32 (1991) .......... 28

*Biestek v. Berryhill*,
587 U.S. 97 (2019) .......... 13

*Bloomberg, L.P. v. Secs. & Exch. Comm'n*,
45 F.4th 462 (D.C. Cir. 2022) .......... 10

*Bridgeport Hosp. v. Becerra*,
108 F.4th 882 (D.C. Cir. 2024) .......... 31, 32

*Cablevision Sys. Corp. v. FCC*,
649 F.3d 695 (D.C. Cir. 2011) .......... 9–10

*Changji Esquel Textile Co. v. Raimondo*,
40 F.4th 716 (D.C. Cir. 2022) .......... 28, 29

*Citizens to Pres. Overton Park, Inc. v. Volpe*,
401 U.S. 402 (1971), *abrogated by Califano v. Sanders*, 430 U.S. 99 (1977) .......... 9, 10

*Coates v. City of Cincinnati*,
402 U.S. 611 (1971) .......... 29

*Crooks v. Mabus*,
845 F.3d 412 (D.C. Cir. 2016) .......... 10, 11

*Dep't of Com. v. New York*,
588 U.S. 752 (2019) .......... 17

*FCC v. Fox Television Stations, Inc.*,
556 U.S. 502 (2009) .......... 19

*Fed. Deposit Ins. Corp. v. Bank of Am., N.A.*,
783 F. Supp. 3d 1 (D.D.C. 2025) .......... 11

*Grayned v. City of Rockford*,
408 U.S. 104 (1972) .......... 29

**Hesai Tech. Co. v. U.S. Dep't of Def.*,
186 F.4th 873 (D.C. Cir. 2026) .......... *passim*

**Hesai Tech. Co. v. U.S. Dep't of Def.*,
792 F. Supp. 3d 22 (D.D.C. 2025), *rev'd on other grounds*,
186 F.4th 873 (D.C. Cir. 2026) .......... 13, 25, 26

*Humanitarian L. Project v. U.S. Dep't of Treasury*,
484 F. Supp. 2d 1099 (C.D. Cal. 2007), *aff'd*, 578 F.3d 1133 (9th Cir. 2009) .......... 31

*In re Pub. Emps. for Env't Resp.*,
957 F.3d 267 (D.C. Cir. 2020) .......... 23–24

*Islamic Am. Relief Agency (IARA-USA) v. Gonzales*,
477 F.3d 728 (D.C. Cir. 2007) .......... 11

*Jicarilla Apache Nation v. U.S. Dep't of the Interior*,
613 F.3d 1112 (D.C. Cir. 2010) .......... 28

*La. Pub. Serv. Comm'n v. Fed. Energy Regul. Comm'n*,
20 F.4th 1 (D.C. Cir. 2021) .......... 10

*Leedom v. Kyne*,
358 U.S. 184 (1958) .......... 28

*Luokung Tech. Corp. v. Dep't of Def.*,
538 F. Supp. 3d 174 (D.D.C. 2021) .......... 30

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983) .......... 10

*NAACP v. U.S. Dep't of Educ.*,
779 F. Supp. 3d 53 (D.D.C. 2025) .......... 29

*Nat'l Council of Resistance of Iran v. Dep't of State*,
251 F.3d 192 (D.C. Cir. 2001) .......... 31

*Norton v. S. Utah Wilderness All.*,
542 U.S. 55 (2004) .......... 22, 23

**PDK Lab'ys Inc. v. U.S. Drug Enf't Admin.*,
362 F.3d 786 (D.C. Cir. 2004) ........................................ 25, 27, 28

*Pham v. Nat'l Transp. Safety Bd.*,
33 F.4th 576 (D.C. Cir. 2022) ........................................ 10, 20

*Sierra Club v. Costle*,
657 F.2d 298 (D.C. Cir. 1981) ........................................ 17

*Sierra Club v. Mainella*,
459 F. Supp. 2d 76 (D.D.C. 2006) ........................................ 11

*Sprint Corp. v. FCC*,
315 F.3d 369 (D.C. Cir. 2003) ........................................ 25

*SZ DJI Tech. Co. v. U.S. Dep't of Def.*,
187 F.4th 528 (D.C. Cir. 2026) ........................................ 13, 15, 17, 18

**SZ DJI Tech. Co. v. U.S. Dep't of Def.*,
Civ. A. No. 24-2970 (PLF), 2025 WL 2761210 (D.D.C. Sep. 26, 2025),
*rev'd in part on other grounds*, 187 F.4th 528 (D.C. Cir. 2026) ........................ *passim*

**Telecomms. Rsch. & Action Ctr. v. FCC*,
750 F.2d 70 (D.C. Cir. 1984) ........................................ 22, 23, 24

*Trifax Corp. v. District of Columbia*,
314 F.3d 641 (D.C. Cir. 2003) ........................................ 25

*U.S. Sugar Corp. v. EPA*,
844 F.3d 268 (D.C. Cir. 2016) ........................................ 31

*United States v. Bronstein*,
849 F.3d 1101 (D.C. Cir. 2017) ........................................ 29

*United States v. Edge Broad. Co.*,
509 U.S. 418 (1993) ........................................ 23

*Woodhull Freedom Found. v. United States*,
72 F.4th 1286 (D.C. Cir. 2023) ........................................ 30

**STATUTES**

5 U.S.C. § 706 ........................................ 11, 22

10 U.S.C. § 113 ........................................ 4

Strom Thurmond National Defense Authorization Act for Fiscal Year 1999,
Pub. L. No. 105-261, 112 Stat. 1920 (1998) ........................................ 2

*William M. (Mac) Thornberry National Defense Authorization Act for Fiscal Year 2021,
Pub. L. No. 116-283, § 1260H, 134 Stat. 3388 ... *passim*

*National Defense Authorization Act for Fiscal Year 2024,
Pub. L. No. 118-31, 137 Stat. 136 (2023) ... 5

Further Consolidated Appropriations Act, 2024,
Pub. L. No. 118-47, 138 Stat. 460 ... 6

*Servicemember Quality of Life Improvement and National Defense Authorization Act for Fiscal Year 2025,
Pub. L. No. 118-159, 138 Stat. 1773 (2024) ... *passim*

National Defense Authorization Act for Fiscal Year 2026,
Pub. L. No. 119-60, 139 Stat. 718 (2025) ... 3

**REGULATIONS**

Notice of Availability of Designation of Chinese Military Companies,
90 Fed. Reg. 1105 (Jan. 7, 2025) ... 6

Notice of Availability of Designation of Chinese Military Companies,
91 Fed. Reg. 35,189 (June 10, 2026) ... 8, 21, 22

**OTHER AUTHORITIES**

*Association*, Black's Law Dictionary (12th ed. 2024) ... 30

*Close*, Merriam-Webster,
https://www.merriam-webster.com/dictionary/close ... 30–31

Dep't of Def., Off. of the Sec'y of Def., *Annual Report to Congress: Military & Security Developments Involving the People's Republic of China, 2011*,
https://perma.cc/QLE7-AJ87 ... 2

Dep't of Def., Off. of the Sec'y of Def., *Annual Report to Congress: Military & Security Developments Involving the People's Republic of China, 2020*,
https://perma.cc/8FT9-M9V3 ... 2–3

H.R. Rep. No. 108-491 (2004) ... 2

Jordan Brunner & Emily Weinstein, *Chinese Military-Civil Fusion and Section 1260H: Congress Incorporates Defense Contributors*, Lawfare (May 4, 2021, at 08:01 ET),
https://www.lawfaremedia.org/article/chinese-military-civil-fusion-and-section-1260h-congress-incorporates-defense-contributors [https://perma.cc/WTS8-RERW] ... 3

## INTRODUCTION

The United States has determined that the Chinese government's symbiotic relationships with certain Chinese technology companies present a national security threat. Pursuant to the congressional mandate in Section 1260H of the William M. (Mac) Thornberry National Defense Authorization Act for Fiscal Year 2021, Pub. L. No. 116-283, § 1260H(a), 134 Stat. 3388, 3965, as amended ("Section 1260H"), the Department of Defense ("the Department") submitted to Congress and published in the Federal Register a list of companies identified as "Chinese military companies" in June 2026. That list includes Quectel Wireless Solutions Co., Ltd. ("Quectel" or "Plaintiff").

Relying on the Administrative Procedure Act (APA), the Constitution, and the statutory authority enumerated in Section 1260H itself, Plaintiff challenges the Department's determination to include the company on the most recent Section 1260H list of Chinese military companies. Its claims fail. The record underlying the Department's Section 1260H determination provides substantial evidence that Quectel is affiliated with a statutorily enumerated Chinese state agency. That evidence thus supports the Department's designation of Quectel as a Chinese military company. And that designation does not violate due process, because Plaintiff cannot show that any additional process would have resulted in a different outcome.

Nor is Section 1260H unconstitutionally vague as applied to Quectel—the statutory text provides sufficient guidance to regulated entities, the Department, and the courts to satisfy the vagueness doctrine. Quectel repackages its claims on the merits as a claim that, because it believes new evidence suggests that the Department's designation is out of date, Defendants are unlawfully withholding or delaying the removal of Quectel from the Section 1260H list. But the law does not require such immediate action, even assuming Quectel is correct on the merits of its claim that it

was wrongfully designated. For these reasons, Defendants are entitled to judgment as a matter of law, and they respectfully request that the Court deny Plaintiff's motion for summary judgment and grant Defendants' cross-motion for summary judgment.

## BACKGROUND

### A. Longstanding Concerns About Chinese Military-Civil Integration

Both Congress and the Executive Branch have long expressed significant concerns about the national security threat posed by the relationship between Chinese technology companies and the Chinese government. In the Strom Thurmond National Defense Authorization Act for Fiscal Year 1999, Congress directed the President to identify entities that meet the statutory definition of a "Communist Chinese military company." Pub. L. No. 105-261, § 1237(a), (b), 112 Stat. 1920, 2160 (1998). In 2005, Congress expanded the definition of a Communist Chinese military company because the then-effective definition, which depended on a company's relationship to the Chinese People's Liberation Army, *see id.* § 1237(b)(4), 112 Stat. at 2161, was too narrow—it "exclud[ed] a class of firms engaged in Chinese military modernization." H.R. Rep. No. 108-491, at 367 (2004).

In its 2011 Annual Report to Congress, the Department observed that "China's defense industry has benefited from integration with a rapidly expanding civilian economy and science and technology sector, particularly elements that have access to foreign technolog[ies]." Dep't of Def., Off. of the Sec'y of Def., *Annual Report to Congress: Military & Security Developments Involving the People's Republic of China, 2011*, at 42, https://perma.cc/QLE7-AJ87. A decade later, the Department again noted that China's broader military-civil fusion strategy seeks to " 'fuse' its economic and social development strategies with its security strategies to build an integrated national strategic system" aimed at advancing the country's national goals. Dep't of Def., Off. of the Sec'y of Def., *Annual Report to Congress: Military & Security Developments Involving the*

*People's Republic of China, 2020*, at 18, https://perma.cc/8FT9-M9V3. China's military-civil fusion strategy aims to "develop and acquire advanced dual-use technology for military purposes," to "deepen reform" of the nation's national defense science and technology industries, and to "strengthen all of China's instruments of national power by 'fusing' aspects of its economic, military, and social governance." *Id.* China "seeks to become a leader in key technologies with military potential," including "biotechnology." *Id.* at 144.

Responding to these concerns, on January 1, 2021, Congress enacted Section 1260H in the William M. (Mac) Thornberry National Defense Authorization Act for Fiscal Year 2021. *See* § 1260H, 134 Stat. at 3965–66. The passage of Section 1260H intended to "build on the foundation laid" by the earlier statutory framework by "extend[ing] and moderniz[ing]" the "Department's reporting requirements regarding 'Chinese Communist Party military companies operating in the United States.' " Jordan Brunner & Emily Weinstein, *Chinese Military-Civil Fusion and Section 1260H: Congress Incorporates Defense Contributors*, Lawfare (May 4, 2021, at 08:01 ET), https://www.lawfaremedia.org/article/chinese-military-civil-fusion-and-section-1260h-congress-incorporates-defense-contributors [https://perma.cc/WTS8-RERW]. In enacting Section 1260H, Congress aimed to use a "more targeted and nuanced approach" than it had previously. *Id.* at 3.

### B. Statutory Background

Section 1260H requires the identification of "each entity the Secretary [of Defense] determines, based on the most recent information available, is operating directly or indirectly in the United States" and "is a Chinese military company." § 1260H(a), 134 Stat. at 3965.[1] As

[1] Section 1260H has been amended twice: once in December 2024, *see* Servicemember Quality of Life Improvement and National Defense Authorization Act for Fiscal Year 2025, Pub. L. No. 118-159, § 1346, 138 Stat. 1773, 2123–26 (2024); and once in December 2025, *see* National Defense Authorization Act for Fiscal Year 2026, Pub. L. No. 119-60, §§ 1262–63, 139 Stat. 718, 1118–19 (2025). One 2025 amendment—reorganizing a list of Chinese entities—is not effective until December 18, 2026, and does not apply here. *See id.* § 1262(b), 139 Stat. at 1119. Citations

relevant here, a "Chinese military company" means an entity that is "directly or indirectly owned by, controlled by, or beneficially owned by, affiliated with, or in an official or unofficial capacity acting as an agent of or on behalf of" the "Chinese Ministry of Industry and Information Technology (MIIT)." § 1260H(g)(2)(B)(i)(I), 138 Stat. at 2124; *see also* 138 Stat. at 2125 (redesignating the former subsection (d) as subsection (g)).

To qualify, the entity must be "engaged in providing commercial services, manufacturing, producing, or exporting." § 1260H(g)(2)(B)(ii), 134 Stat. at 3966; *see also* 138 Stat. at 2125. And the definition "includes a wholly-owned or wholly-controlled subsidiary or wholly-owned or wholly-controlled affiliate of such an entity or any entity that owns in the aggregate, directly or indirectly, 50 percent or more of any entity or entities described in subparagraph (B)." § 1260H(g)(2)(C), 138 Stat. at 2124.

Congress defined "affiliated with" to mean "in close formal or informal association." § 1260H(g)(1), 138 Stat. at 2124. And it explained that the phrase "operating directly or indirectly in the United States or any of its territories and possessions" includes "an entity selling goods in, or receiving goods or services from, the United States or any of its territories or possessions, regardless of whether the entity has a physical presence in the United States." § 1260H(g)(4), 138 Stat. at 2125. MIIT is a "powerful" Chinese state agency that, among other things, "[f]ormulates and supervises the implementation of industry-specific standards, especially in telecommunications, [information technology], digital technology, cybersecurity, and industrial manufacturing." Administrative Record ("AR") at 447, 449. As relevant here, the China Academy for Information and Communications Technology (CAICT) is "subordinate to" MIIT. AR 449.

---

throughout are to Section 1260H, as amended, and to the relevant U.S. Statutes at Large pincite. The consolidated provision is also available at 10 U.S.C. § 113 note.

CAICT "includes a range of technical departments and experts that provide input to industry on critical issues such as standards, technical trials, and emerging technology sectors such as blockchain and AI that have applications in the information and communications arena." *Id.* CAICT is a "major player in China's 5G mobile communications network trials, for example." *Id.* And the sub-agency serves as a "key technical certifier" on important industry development groups. *Id.*

The Department must "establish such reasonable procedures as are necessary to implement the provisions" of Section 1260H, "including for obtaining information from outside entities relevant to" the Section 1206H list "and procedures for removal of entities from the list." § 1206H(e), 138 Stat. at 2126. And the Secretary must make "annual revisions" to the list—Congress requires that the Secretary make "additions or deletions to the most recent" Section 1260H list "not less frequently than annually based on the latest information available." § 1260H(b)(3)(A), 134 Stat. at 3965; 138 Stat. at 2123–24.

A Section 1260H designation results in certain downstream consequences under federal law. For instance, in a statutory ban that took effect on June 30, 2026, Congress prohibited the Department from contracting for goods, services, or technology with any Chinese military company. *See* National Defense Authorization Act for Fiscal Year 2024, Pub. L. No. 118-31, § 805(a)(1)(A), 137 Stat. 136, 315–17 (2023). And, starting on June 30, 2027, the Department is prohibited from contracting "for the procurement of goods or services that include goods or services produced or developed" by a Chinese military company. *Id.* § 805(a)(1)(B), 137 Stat. at 315. Similarly, the Department of Homeland Security is barred from using appropriated funds to "enter into a procurement contract, memorandum of understanding, or cooperative agreement

with, or make a grant to, or provide a loan or guarantee to, any" Chinese military company. Further Consolidated Appropriations Act, 2024, Pub. L. No. 118-47, § 536, 138 Stat. 460, 622.

**C. The Department's Designation of Quectel as a "Chinese Military Company"**

Plaintiff Quectel Wireless Solutions is a technology company founded in 2010 and incorporated in Shanghai, China. *See* AR 58. Plaintiff specializes in the research and development, production, and sales of "wireless communication modules and solutions." *Id.* "Quectel's products include Internet of Things (IoT) products, 5G, 4G, legacy, Low-Power Wide-Area (LPWA), automotive, smart, satellite, Wi-Fi, and global navigation satellite system (GNSS) modules." *Id.* Quectel's products "are used in transportation, energy, wireless gateways, agricultural and environmental monitoring, and smart security." *Id.* The company is publicly traded on the Shanghai Stock Exchange. *See id.*; *see also* AR 83. Quectel operates indirectly in the United States by employing U.S.-based distributors for its projects. *See* AR 62–64; *see also* Pl.'s Mem. in Supp. of Mot. for Summ. J. at 6, ECF No. 15 (acknowledging Quectel's "substantial U.S. connections").

In January 2024, Representatives Mike Gallagher and Raja Krishnamoorthi of the House Select Committee on China wrote to the then-Secretaries of Defense and the Treasury "ask[ing] about the potential inclusion of [Quectel] on the Department of Defense's list of Chinese Military Companies" and noting that Quectel "may meet the legal requirements" to be included on the list. *See* Ex. 7 to Decl. of Brian J. Fleming at 2, ECF No. 15-8. Roughly a year later, the Department published a Section 1260H list that included Quectel. *See* Notice of Availability of Designation of Chinese Military Companies, 90 Fed. Reg. 1105, 1106 (Jan. 7, 2025). In the weeks and months thereafter, Plaintiff engaged with the Department in an effort to seek reconsideration of that designation. *See* AR 73–158.

On February 4, 2025, the Department provided Plaintiff with the summary report supporting Quectel's inclusion on the Section 1260H list. *See* AR 90–91. As counsel for Quectel

later summarized, the report explained that Plaintiff had been designated on that list because the Department determined Quectel to be a "military-civil fusion contributor" under Section 1260H that had an "affiliation" with MIIT "through research partnerships, in addition to providing recognition and awards." AR 73 (citation omitted). And, counsel continued, the report concluded that Quectel "contributes to the Chinese defense industrial base through its development of IoT products" that are "compatible with BeiDou, China's Global Navigation Satellite System." AR 79 (citation omitted).

On March 24, 2025, Plaintiff requested reconsideration of the January 2025 designation, arguing, among other things, that the Department's definition of "affiliated" is inconsistent with the law, AR 74, that Quectel had no role in carrying out "testing cooperation and standard formulation," *id.*, that the receipt of awards from MIIT did not qualify as an "affiliation" under the law, AR 76, and that, under the Department's theory, other "[l]eading U.S. companies" would qualify as being affiliated with MIIT, AR 77–78. The Department responded with certain clarifying questions, including, on April 7, 2025, asking whether Quectel has received financial incentives from CAIC or MIIT and whether Quectel has been involved with MIIT-led "working groups or implementation plans." AR 145–46. Additional follow-ups included, on June 4, 2025, an inquiry into whether any Quectel subsidiaries or affiliates received financial incentives from CAICT or MIIT. *See* AR 141–42. And the Department requested, on August 11, 2025, for documentation related to MIIT funding for a 5G project—of which Quectel funded the "vast majority" but which also incorporated funding from MIIT. AR 138–39. Finally, representatives for Plaintiff attended an in-person meeting with Department officials on January 13, 2026. *See* AR 150. At that meeting, Plaintiff reiterated its positions that it does not contribute to the Chinese

defense industrial base, AR 153–54, and that it is not "affiliated with MIIT through research partnerships, in addition to providing recognitions and awards," AR 155.

On February 13, 2026, the Department temporarily made public a "pre-publication version" of a new Section 1260H list. AR 270 (noting the publication); *see also* Ex. 2 to Fleming Decl. at 2, ECF No. 15-3.[2] The list "appeared to maintain Quectel's listing based on an asserted 'indirect affiliation with MIIT.' " AR 270. Plaintiff sent several letters to the Department in the following months, *see* AR 266–72, noting in its final letter on April 22, 2026 that "[i]f the Department fails to provide the requested information" on Quectel's pending reconsideration request "within seven days," then "Quectel intends to file suit in federal district court." AR 272. Plaintiff filed its original complaint in this action on May 11, 2026. *See* Compl., ECF No. 1.

The Department issued a new Section 1260H list that was published in the Federal Register on June 10, 2026. *See* Notice of Availability of Designation of Chinese Military Companies, 91 Fed. Reg. 35,189 (June 10, 2026); *see also* AR 31–36. The June 2026 list—currently the effective Section 1260H list—includes Quectel. *See* 91 Fed. Reg. at 35,193; *see also* AR 35. The Department based its designation on its determination that "Quectel is indirectly affiliated with MIIT." AR 35.

The Department's internal report, dated May 12, 2026, sets forth the detailed basis for placing Quectel on the Section 1260H list. *See* AR 55–69. The report explains that Quectel is affiliated with MIIT "through the development of multiple national standards under the authority

[2] In response to an inquiry from Plaintiff's counsel, the Department explained that "[i]t came to the attention of the Department that the 1260H list posted for public inspection on the Federal Register on February 13 may require updates based on the statutory requirement to review the most recent information available." AR 221. The Department indicated at the time that it "will publish an updated list in accordance with the statute to make additions or deletions as the Secretary deems appropriate." *Id.*

of MIIT and participation in the IoT Alliance." AR 59; *see also* § 1260H(g)(2)(B)(i)(I), 138 Stat. at 2124. "In February 2025, Quectel was one of the main drafting units of the national standard 'Performance Requirements and Test Methods for Hands-Free Calling and Voice Interaction of Road Vehicles' under the authority of the MIIT." AR 60. That standard "was implemented in February 2025" and, per the latest information available to the Department, "is currently active." *Id.* Quectel also served as a main drafting unit for a 5G industry standard and an in-vehicle wireless industry standard. *See* AR 61. And the company "jointly established the IoT Alliance" with CAICT, a "scientific research institute subordinate to MIIT." *Id.* The Department explained that Quectel had previously "argued that it is not 'affiliated with' MIIT and contended that the awards and project cited by the Department in the Department's prior determination were dated; that the awards were honorary; and that MIIT did not participate in the project cited by the Department." AR 59. The Department concluded otherwise, "[b]ased on [the] new information[]" outlined above. *Id.*

### D. This Litigation

Because Plaintiff filed its original complaint before the Department's updated designation, the parties agreed to propose a schedule for further proceedings, including for Plaintiff to amend its complaint. *See* Joint Mot. for Scheduling Order at 2, ECF No. 11. Plaintiff amended its complaint on August 5, 2026. *See* First Am. Compl., ECF No. 13. Pursuant to the Court's scheduling order, Plaintiff moved for summary judgment on September 11, 2026. *See* ECF No. 15.

## STANDARD OF REVIEW

The Administrative Procedure Act's (APA) arbitrary-and-capricious standard "is a narrow one." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971), *abrogated by Califano v. Sanders*, 430 U.S. 99 (1977). APA review is "very deferential." *Cablevision Sys. Corp.*

*v. FCC*, 649 F.3d 695, 714 (D.C. Cir. 2011) (citation omitted). Indeed, a "court is not empowered" under the APA "to substitute its judgment for that of the agency." *Overton Park*, 401 U.S. at 416. A court may find an agency's decision arbitrary and capricious only where the agency "has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency," or made a decision "so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Under this highly deferential standard, an agency's decision should be upheld as long as the decision is supported by a rational basis and the findings are supported by substantial evidence. *See id.*

The APA's substantial-evidence standard sets a "low bar." *La. Pub. Serv. Comm'n v. Fed. Energy Regul. Comm'n*, 20 F.4th 1, 7 (D.C. Cir. 2021). Substantial evidence "is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pham v. Nat'l Transp. Safety Bd.*, 33 F.4th 576, 581 (D.C. Cir. 2022) (citation omitted). The standard "requires more than a scintilla, but can be satisfied by something less than a preponderance of the evidence." *Bloomberg, L.P. v. Secs. & Exch. Comm'n*, 45 F.4th 462, 475 (D.C. Cir. 2022) (citation omitted). Factual findings "may be supported by substantial evidence even though a plausible alternative interpretation of the evidence would support a contrary view." *Archer W. Contractors, LLC v. U.S. Dep't of Transp.*, 45 F.4th 1, 6 (D.C. Cir. 2022) (citation omitted). The fact that the agency "did not draw the inferences" that a plaintiff "might wish when examining" the evidence "does not render its decision arbitrary and capricious or unsupported by substantial evidence." *Crooks v. Mabus*, 845 F.3d 412, 424 (D.C. Cir. 2016). Indeed, an agency is "not required" to credit a plaintiff's claims, nor must it "explain away every point raised" or "piece of evidence contained"

in any submission a plaintiff might make to the agency. *Id.* (citation omitted). Further, deference under the APA is especially heightened in cases—like this one—that involve national security and foreign affairs. *See Islamic Am. Relief Agency (IARA-USA) v. Gonzales*, 477 F.3d 728, 734 (D.C. Cir. 2007) (noting that such review is "extremely deferential").

Summary judgment under the APA entails the district court serving "as an appellate tribunal" reviewing the "entire case" as "a question of law." *Fed. Deposit Ins. Corp. v. Bank of Am., N.A.*, 783 F. Supp. 3d 1, 16 (D.D.C. 2025) (quoting *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001)). That task requires assessing "whether the agency action" at issue "is supported by the administrative record and otherwise consistent with the APA standard of review." *Id.* (quoting *Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 90 (D.D.C. 2006)). Under that standard, courts must "hold unlawful and set aside" any "agency actions that are, among other things, 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,' " including whether any action is "without observance of procedure required by law." *Id.* (quoting 5 U.S.C. § 706(2)(A), (C), (D).

**ARGUMENT**

On the merits, Plaintiff argues that, under the APA, Defendants' designation of Quectel on the June 2026 Section 1260H list was "[a]rbitrary and [c]apricious and [u]nsupported by [s]ubstantial [e]vidence." ECF No. 15 at 17. It argues that the Department's stated bases for determining that Quectel is affiliated with MIIT are insufficiently explained, fail to establish the kind of "close" association required under Section 1260H, and ignore the most recent information available. *See id.* at 19–31. Plaintiff also argues that Defendants' designation was contrary to Plaintiff's Fifth Amendment constitutional due-process rights. *See id.* at 13–17. And Plaintiff argues that Defendants failed to follow procedures required under the law, *see id.* at 32–34, and

that Defendants have unlawfully withheld or unreasonably delayed removal of Quectel from the Section 1260H list, *see id.* at 34–38.

Those arguments fail. The law makes clear that the deferential APA standard of review requires deferring to the substantial evidence Defendants marshaled in support of their designation of Quectel. And, even assuming Defendants deprived Plaintiff of constitutionally protected liberty or property interests, they accorded Plaintiff sufficient process—and, at bottom, any procedural error was harmless, given the ample opportunity Plaintiff had to address the nature of its relationships with MIIT. Further, Defendants complied with the discretionary procedural requirements under Section 1260H. And Plaintiff cannot show that Defendants unreasonably delayed or unlawfully withheld agency action.

## I. Defendants' Section 1260H Designation of Quectel Satisfies the APA.

### A. Substantial evidence supports the Department's designation of Quectel as a Chinese military company.

Plaintiff's primary APA argument asserts that the evidence before the Department fails to support a "close formal or informal association" between Quectel and MIIT. ECF No. 15 at 19 (quoting § 1260H(g)(1), 138 Stat. at 2124). In Plaintiff's view, the Department's evidence fails to "identify how" standards-drafting activities "create any *current* affiliation with MIIT" and fails to show that such participation "creates a 'close association' " with the Chinese agency. *Id.* at 19–20. Plaintiff believes the same is true of evidence related to Quectel's membership in the IoT Alliance, along with MIIT. *See id.* at 23–24.

Contrary to Plaintiff's arguments, Defendants relied on substantial evidence for its findings. And that evidence supports inclusion of Quectel on the Section 1260H list. Specifically, the Department first determined that Quectel is affiliated with MIIT "through development of multiple national standards under the authority of MIIT." AR 60. Indeed, the Department

uncovered evidence that Quectel collaborated on the development of national industry standards on at least three different occasions, most recently in February 2025. *See* AR 60–61. And it also independently determined that Quectel was affiliated with MIIT through the joint establishment of the IoT Alliance, an organization aimed at promoting the mobile IoT industry in China. *See* AR 61. Importantly, the Department concluded that the "development of multiple national standards and participation in the IoT Alliance demonstrate a pattern of association between Quectel and MIIT." AR 60. And those associations "collectively demonstrate that Quectel is a Chinese military company." *Id.* Those determinations are supported by substantial evidence and entitled to deference. *See Hesai Tech. Co. v. U.S. Dep't of Def.*, 792 F. Supp. 3d 22, 34 (D.D.C. 2025) ("*Hesai*"), *rev'd on other grounds*, 186 F.4th 873 (D.C. Cir. 2026) ("*Hesai II*"); *SZ DJI Tech. Co. v. U.S. Dep't of Def.*, Civ. A. No. 24-2970 (PLF), 2025 WL 2761210, at *17 (D.D.C. Sep. 26, 2025) ("*DJI*"), *rev'd in part on other grounds*, 187 F.4th 528 (D.C. Cir. 2026) ("*DJI II*"); *see also Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). Plaintiff does not point to evidence that contradicts those findings. Nor does the evidence fail to establish that the affiliation between Quectel and MIIT is "close." The designation thus satisfies the APA.

*First*, the Department identified an adequate factual basis to determine that Quectel is affiliated with MIIT by virtue of Quectel's participation—as a "main drafting unit," no less—in the development of at least three national industry standards from late 2023 through 2025. AR 60–61; *see also* AR 329 (identifying Quectel as a "main drafting unit" for a hands-free technology standard under the "authority" of MIIT); AR 342 (same for a 5G technology standard); AR 354 (same for a vehicular wireless communication standard). And that role is no mere triviality: "standards formulation is part of a national strategy to 'create a blueprint for the Chinese government and leading tech companies to set global standards for critical and emerging

technology industries." AR 60; *see also* AR 371 (for legibility, also available at https://perma.cc/J6JS-GPAW). Standards formulation in China serves an important national goal: to "promote China's role in the formulation" of "national and international standards, thereby increasing the global dominance of China's critical and emerging technology industry." AR 60; *see also* AR 378–83 (government notice laying out national priorities in developing technological standards).

Plaintiff points to this Court's opinion in *DJI* to argue that the evidence the Department uncovered is both insufficiently recent and insufficiently substantial. *See* ECF No. 15 at 19–21. But *DJI* redounds to Defendants' benefit here. The Court in that case determined that collaboration between an entity and MIIT to "draft a national standard" and to serve as a "main drafting unit" on another standard *was* "more substantial." *DJI*, 2025 WL 2761210, at *13 (citation omitted). And the record evidence in that case—that "China has taken a 'strategic approach toward technical standards,' and 'views standardization as a way to strengthen its research and development . . . ecosystem by elevating whole-sector capacities,' " *id.* (citation omitted)—tracks perfectly with the evidence the Department relied on designating Plaintiff as a Chinese military company pursuant to Section 1260H. *See* AR 413–14 (noting that the Chinese strategy "should not be viewed as a move away from state control, but rather as a strategy to strengthen the capabilities of the state-centred standards system" and that the "Chinese government will continue to oversee national mandatory standards in critical areas related to national security [and] the technologies of the future like AI and quantum, . . . thus ensuring that standardisation serves broader competitiveness and geopolitical objectives").

The Court in *DJI* found the Department stumbled in basing its determination on only one "single instance of cooperation with MIIT" in the "recent past." *DJI*, 2025 WL 2761210, at *13.

And the Court observed that the Department failed to propound evidence that DJI "continues to be 'affiliated with' MIIT." *Id.* (citation omitted). Here, in contrast, the Department uncovered evidence of at least three national standards Quectel helped draft under MIIT's authority between 2023 and 2025. *See* AR 60–61. And the evidence it uncovered—and cited—suggested that each standard was "currently active" as of the date of the Department's designation. *Id.*; *see also* AR 330 (indicating the standard was "current"); AR 342 (indicating the standard is "in force"); AR 354–55 (same). *DJI*, therefore, shows why the evidence the Department uncovered *does* demonstrate a "close formal or informal association" between Quectel and MIIT. *DJI*, 2025 WL 2761210, at *13 (citation omitted).

Directly undermining any conclusion that Quectel's affiliation with MIIT is too removed in time to be a valid basis for designation is the fact that Quectel's relationships with standards-setting organizations in China appear to have continued well through 2026. Quectel cites a "self-serving," *SZ DJI Tech. Co. v. U.S. Dep't of Def.*, 187 F.4th 528, 537 (D.C. Cir. 2026) ("*DJI II*"), declaration from its CEO asserting that the company "ceased participation in these activities no later than 2023," ECF No. 15 at 23 (citing Decl. of Patrick Qian ¶¶ 27–30, ECF No. 15-9). But that evidence was not before the Department at the time of its designation. And, indeed, though such evidence is outside the administrative record and not properly before the Court in this APA litigation, Plaintiff actively undermined that assertion by filing on the docket three notices indicating that it withdrew from Chinese standards-setting groups in *July 2026*. *See* Ex. 1 to Qian Decl., ECF No. 15-10; Ex. 2 to Qian Decl., ECF No. 15-11; Ex. 3 to Qian Decl., ECF No. 15-12. Considering that evidence, it is clear that Quectel *has* maintained associations with Chinese standards-setting groups, and that those associations extend past the Department's June 2026 designation of Plaintiff under Section 1260H.

Plaintiff suggests that the broad sweep of the state-sponsored Chinese standards-development apparatus cuts against any conclusion that its relationship with MIIT is sufficiently "close" under Section 1260H. *See* ECF No. 15 at 21–22. It's not clear why that logic has any force. Indeed, the evidence before the Department emphasizes that standards development *is* a whole-of-government effort, conducted in conjunction with sector-wide swaths of entities. The Department might rightfully conclude—as it did here—that such efforts present *more* concern than limited-in-scope, one-off standards-setting activities. *See* AR 60–61 (noting that MIIT's formulation of standards across 19 industries "ensures a broad participation in China's standards initiatives," thus advancing the Chinese goal of "increasing the global dominance of China's critical and emerging technology industry"). Indeed, broad participation appears to be the very purpose of the Chinese government's state-wide efforts to bolster standards-setting activities. Such a fact cannot and should not diminish the weight that each individual actor's participation might receive for the purpose of determining whether a designation under Section 1260H is warranted. The breadth of an agency's remit tells us nothing of how *closely* the agency works with each actor within that remit. And the Department identified evidence showing that the standards-development network in China *does* involve close collaboration between industry members and Chinese government agencies. *See* AR 60–61; *see also* AR 413 (indicating that the Chinese government maintains significant "state control" over the standards-setting process and that the government will "oversee national mandatory standards" in critical areas).

Further, Plaintiff argues that relying on state-sponsored Chinese standards development in making designation determinations would create an "untenable result that exposes drafting participation as an ordinary, open, multi-stakeholder activity rather than a marker of institutional affiliation." ECF No. 15 at 21. The D.C. Circuit, however, has squarely rejected this argument.

The other stakeholders Plaintiff identifies may very well qualify as a Chinese military company under the broad language of Section 1260H (or they may not), but Defendants need not make that determination before designating *Plaintiff*. *See DJI II*, 187 F.4th at 538. Indeed, there may be many reasons why the Department has not designated other entities with the same characteristics as Plaintiff, but there is "no support for requiring such a resource-intensive all-or-nothing approach" as "scouring the earth for every other potentially similarly situated company, investigating each company sufficiently to reach an informed decision, and then explaining any seemingly differing treatment." *Id.* "Agency policymaking is not a 'rarefied technocratic process, unaffected by political considerations or the presence of Presidential power.' " *Dep't of Com. v. New York*, 588 U.S. 752, 781 (2019) (quoting *Sierra Club v. Costle*, 657 F.2d 298, 408 (D.C. Cir. 1981)). "Such decisions are routinely informed by unstated considerations of politics, the legislative process, public relations, interest group relations, foreign relations, and," as relevant here "national security concerns." *Id.* Evidence of Plaintiff's participation in the development of national standards under MIIT's authority adequately supports the Department's June 2026 Section 1260H designation.

*Second*, the Department had a sufficient factual basis to determine that Quectel's position as a "vice chairman unit" and founder of the IoT Alliance—jointly established with CAICT, a research institute subordinate to MIIT—independently supports the conclusion that Quectel is affiliated with MIIT. AR 61; *see also* § 1260H(g)(2)(B)(i)(I), 138 Stat. at 2124. Quectel—"along with other core companies in the communications industry"—jointly established the IoT Alliance in June 2023 with CAICT, which is a wholly subordinate research institute to MIIT. AR 61; *see also* AR 449. CAICT "is a key technical certifier in governmental equipment trials." AR 61. Further, its industry research "represent[s] an effort by MIIT to assert a role within key technology sectors at a time when sometimes-competing centers of influence within China's party-state are

together setting technological standards and charting China's official strategic direction." AR 449. And, in June 2023, CAICT invited Quectel to serve as "one of the first vice-chairman units" of CAICT's "Mobile IoT Development Alliance," which aims to "build a collaborative exchange platform to promote the comprehensive development of mobile IoT, address common technical and industrial issues, explore typical application cases, strengthen collaboration across the mobile IoT industry chain, and jointly build a sound industrial ecosystem for mobile IoT." AR 363–64.

Plaintiff's objections to this evidence tread familiar ground: it argues that there is no "actual relationship" between Quectel and MIIT because any relationship is too "attenuated," as evidenced by the fact that "every company, university, or trade association that has ever participated in a standards body, research consortium, or industry alliance alongside CAICT (or any other entity subordinate to MIIT) would likewise be deemed 'affiliated with' MIIT."[3] ECF No. 15 at 24. As above, that argument fails. The broad text of Section 1260H contemplates *all* entities "affiliated with" MIIT, § 1260H(g)(2)(B)(i)(I), 138 Stat. at 2124, no matter how many such entities there may be. As long as that association is "close," then, under the law, it qualifies. Under the text of Section 1260H, no "military" connection, ECF No. 15 at 27, is necessary, *see* § 1260H(g)(2)(B) (indicating that any entity that provides "commercial services" and is "affiliated with" MIIT qualifies, regardless of the nature of the entity or its services and products). And the fact that the available evidence suggests that MIIT's connections sweep broadly does not establish that the Department's

---

[3] Plaintiff raises an argument that the Department acted arbitrarily and indiscriminately in categorizing Quectel based on a purportedly "indirect" affiliation. ECF No. 15 at 25–28. But the specific descriptor used for the affiliation matters not—what matters is that the Department has shown that Quectel is "in close formal or informal association" with MIIT. § 1260H, 138 Stat. at 2124. A direct relationship with a direct subsidiary of MIIT—CAICT—qualifies. And, as above, mere failure to take an action with respect to other similar entities, where there is no evidence the Department even "considered" much less "deliberately [took]" a "prior position[]" not to list those entities, is not a basis for relief under the APA. *DJI II*, 187 F.4th at 538 (citation omitted).

determination was contrary to the available evidence. *Contra* ECF No. 15 at 28–29. Indeed, the depth and breadth of MIIT's influence instead supports that the Chinese government's strategic goals aim to establish "global dominance of China's critical and emerging technology industry." AR 60. The evidence *supports* designating entities falling within that whole-of-government effort.

Nor does Plaintiff's argument that the Department's "shift" in rationale is arbitrary, *see* ECF No. 15 at 30–31, carry any water. For one, Plaintiff is incorrect that the rationale underpinning the June 2026 designation is "materially different," *id.* at 30, than those underlying its earlier designations. The January 2025 designation rested on an identical statutory basis: that Quectel is "affiliated with" MIIT, the same designation that supports the January 2026 designation. Quectel advanced arguments (much as it does now) that (1) affiliation requires some measure of control, *see* AR 74, and (2) that working with MIIT to carry out "testing cooperation and standard formulation" cannot create an affiliation, *see id.* The Department considered and rejected those arguments as a matter of law, and, when it uncovered facts showing *new* affiliations under those standards, it made the same determination in June 2026. And, second, even if the basis changed—which Defendants do not concede, at least insofar as any change was material—substantial evidence supports the new designation, which means it survives any challenge. The Department provided a "reasoned explanation," *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009), for why Plaintiff qualifies as a Chinese military company. That reasoned explanation—which "need not" be "more detailed . . . than what would suffice for a new policy created on a blank slate," especially where there are no contradictory factual findings, *id.*—provides a sufficiently rational basis to qualify under APA review.

The Department relied on substantial evidence supporting its independent findings that Quectel is affiliated with MIIT through the company's participation in multiple MIIT-overseen

standards-setting groups and in a joint alliance with an MIIT-managed entity. Its designation thus satisfies the APA's arbitrary-and-capricious standard. *See Pham*, 33 F.4th at 581. Plaintiff's arguments to the contrary—raising the specter of limitless and arbitrary enforcement of this important national-security statutory scheme—fail to give Congress the deference it deserves in making its determination that *any* affiliation with enumerated Chinese state agencies merits legal sanction. Plaintiff's arbitrary-and-capricious claim thus fails.

**B. Defendants' reconsideration process accords with statutory requirements.**

Plaintiff independently challenges the Department's designation-and-removal process as contrary to the statutory requirements included in Section 1260H and, thus, violative of the APA's prohibition on any agency action contrary to law. *See* ECF No. 15 at 32–34. Plaintiff argues that the procedures the Department implemented for removing entities from the Section 1260H list were not "reasonable" under the statute because the Department "never meaningfully addressed Quectel's submissions, never explained why the [first designation] remained justified in light of those submissions," and failed to "identify and give notice of any alternative basis on which [the Department] was considering retaining the designation." *Id.* at 32–33.

The problem for Plaintiff's argument is that the relevant statutory language confers on the Department significant discretion to set any procedure that satisfies the deferential requirement that the procedure be "reasonable." In relevant part, Section 1260H(e) requires the Secretary of Defense to "establish such reasonable procedures as are necessary to implement the provisions of this section, including for obtaining information from outside entities relevant to the [Section 1260H list] and procedures for removal of entities from the [Section 1260H list]." Section 1260H(e), 138 Stat. at 2126. No other provision governing the removal of entities appears.

The Department's existing procedures satisfy the deferential standard imposed by the requirement that the Secretary establish "reasonable" removal procedures. The June 2026 Section

1260H list provides entities details of a "Reconsideration Process" that the Department employs. 91 Fed. Reg. at 35,194. Under that process, "[e]ntities who are included on the 1260H List may request reconsideration of this decision." *Id.* Such requests must include "[t]he listed entity's name and mailing address (including email address) and an authorized representative's name and mailing address (including email address)." *Id.* And the request must "indicat[e] the entity's intent to request reconsideration of the Department's determination, including a detailed description with supporting evidence of why the listed entity should be removed from the 1260H List." *Id.* Entities may also include "additional information" indicating that an "insufficient basis" exists for the current listing or that the "circumstances resulting in the listing no longer apply." *Id.* And, as Quectel's experience shows, entities may then engage with the Department, present their evidence, and have that evidence considered in any future listing, delisting, or relisting. *See* AR 70–158 (documenting the extensive engagement between Quectel and the Department); *see also* AR 59–60 (indicating that the Department found information that contradicted Quectel's arguments against inclusion on the Section 1260H list).

The Department's process is more than "reasonable" under Section 1260H. Reasonableness is assessed against the backdrop of a great amount of deference afforded to an agency when the applicable statutory text establishes that Congress granted broad discretion to the agency. *Cf. Am. Fed'n of Gov't Emps., AFL-CIO, Local 446 v. Nicholson*, 475 F.3d 341, 355 (D.C. Cir. 2007) (explaining, in a pre-*Loper Bright* case, that the assessment of whether "an agency's actions under a statute are unreasonable" merits significant deference to the agency's choices (citation omitted)). The Department established a procedure, permitted designated entities to submit evidence for reconsideration, and considered that evidence in updating the Section 1260H list. Such a procedure is eminently reasonable. And, contrary to Plaintiff's argument that the

procedure fails to account for the "most recent information available," ECF No. 15 at 33 (citation omitted), the Department's process satisfies Section 1260H's reasonableness threshold by enabling the Department to consider information *as* it becomes available, an especially acute need in light of the fact that the Chinese government "frequently remove[s]" information about entities like Quectel "from the internet." AR 57, 286–310. Indeed, even where an agency fails to "specifically refer" to a regulated entity's argument, that is "not evidence" that the agency "failed to consider the information." *DJI*, 2025 WL 2761210, at *7 (citation omitted). Plaintiff's claim thus fails.

### C. Plaintiff can show no unlawful withholding or unreasonable delay.

Plaintiff next argues that the Department has unlawfully withheld or unreasonably delayed under 5 U.S.C. § 706(1) a "removal determination" for Quectel based on the latest information available to the Department. ECF No. 15 at 34–38. Under § 706(1), a plaintiff may proceed with its claim where it asserts an agency "failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004). Plaintiff invokes the factor-based standard set forth by the D.C. Circuit in *Telecommunications Research & Action Center v. Federal Communications Commission*, 750 F.2d 70, 80 (D.C. Cir. 1984) ("*TRAC*"), to support its claim. *See* ECF No. 15 at 35.

Plaintiff stumbles at the threshold, though, because it has failed to point to any statutory provision that *requires* the Department to do anything at this point in time. The most recent designation of Quectel on June 10, 2026. *See* 91 Fed. Reg. at 35,193. As the Department explained, that information was based on the latest information available to it.[4] AR 57. So the annual-revision

[4] Plaintiff appears to argue throughout its briefing that information underlying the June 2026 designation had "long been available to the Department." ECF No. 15 at 36. That assertion improperly assumes that, even assuming such information *had* "long" been public and readily available to access by the Department, it would be reasonable to expect the agency to have perfect

requirement, in being presented with new information, means that any action regarding Quectel's status must happen, at the earliest, in the Department's *next* "annual revision." § 1260H(b)(3)(A), 134 Stat. at 3965; 138 Stat. at 2123–24. There is no effective duty at this point in time, meaning that Plaintiff's § 706(1) claims must fail. *See Norton*, 542 U.S. at 64.

Even assuming that Plaintiff can identify a discrete duty in effect as of today, the *TRAC* test conclusively establishes that Plaintiff's § 706(1) fails. The first and second factors—whether a "rule of reason" informed by a congressional "timetable or other indication of the speed with which [Congress] expects the agency to proceed in the enabling statute" suggests that the action is delayed—weigh decisively in the Department's favor. *TRAC*, 750 F.2d at 80 (citation omitted). As noted above, Congress required the Department to make annual revisions of the Section 1260H, and required the Secretary to "make additions or deletions to the most recent list . . . not less frequently than annually." § 1260H(b)(3)(A), 134 Stat. at 3965; 138 Stat. at 2123–24. The very *earliest* date Plaintiff identifies is the date it first submitted information related to its prior designation, which submission occurred on March 24, 2025. *See* ECF No. 15 at 35. Even assuming that the June 2026 designation does not start that clock anew—which it does—the "rule of reason" governing such delay claims shows that, given the Department's clear consideration of Quectel's evidence under a reasonable timeline, as evidenced by the numerous meetings the parties held and the consideration the Department gave Quectel's evidence in its updated designation, the Department's timeline was not unlawful or delayed. *See In re Pub. Emps. for Env't Resp.*, 957

---

and instantaneous uptake of that public information at the moment it is made public. The law does not demand that kind of perfect access to information from agency actors. *Cf. United States v. Edge Broad. Co.*, 509 U.S. 418, 434 (1993) ("Nor do we require that the Government make progress on every front before it can make progress on any front."). And, moreover, that assertion ignores the Department's (uncontradicted) finding that information on the internet related to Chinese entities is frequently edited, updated, or wholesale removed, making the Department's task of finding recently available information all the more difficult. *See* AR 57.

F.3d 267, 274 (D.C. Cir. 2020) (outlining that only "egregious" delays, on the order of multiple years, qualify).

The rest of the *TRAC* factors weigh even more strongly in Defendants' favor. No issue involving "human health and welfare" is at stake here. *TRAC*, 750 F.2d at 80 (outlining factor three). Section 1260H is a due-diligence scheme that provides a basis for the government to ensure it does not introduce national-security risks into the government supply chain. As such a scheme, it qualifies squarely as an economic regulation, in that it serves as an input into the Department's procurement procedures. That means any delays are more likely to be "reasonable." *Id.* Further, ordering expedited action here would, indeed, impair "competing" agency priorities, *id.* (outlining factor four)—namely, assessment and reassessment of Section 1260H designations. As the administrative record here shows, the reconsideration process is heavily time consuming—in this case, occurring over roughly a year. *See* AR 73–158. Such a process, if ordered by the Court here, would necessarily impede the agency's ability to conduct similar processes for other entities. And the "nature and extent of the interests prejudiced by delay," *TRAC*, 750 F.2d at 80 (outlining the fifth factor), support Defendants here, as Plaintiff seeks only to vindicate certain "supplier relationship[s]" it has in its U.S. business, ECF No. 15 at 15. In sum, under *TRAC*, even assuming Defendants have violated a mandatory duty—which they have not—under the law, a § 706(1) claim is not cognizable here.

## II. The Department's Section 1260H Designation Procedure Did Not Prejudice Plaintiff.

Plaintiff argues that the Department violated its procedural-due-process rights in designating Quectel as a Chinese military company, claiming both that the Department deprived it of constitutionally protected liberty and property interests, *see id.* at 14–16, and that the Department failed to accord it sufficient procedural due process before doing so, *see id.* Setting aside whether Plaintiff has been deprived of such interests or whether the Department afforded it

adequate process before doing so, any error on the Department's part was not prejudicial, because the company cannot show that such error would have "affect[ed] the outcome." *PDK Lab'ys Inc. v. U.S. Drug Enf't Admin.*, 362 F.3d 786, 799 (D.C. Cir. 2004). That holds true notwithstanding the fact that the government bears a heavy burden in showing that procedural errors in Section 1260H cases could be harmless. *See Hesai Tech. Co. v. U.S. Dep't of Def.*, 186 F.4th 873, 881 (D.C. Cir. 2026) ("*Hesai II*"). Any error here *was* harmless, because the effective designation—based on Quectel's affiliation with MIIT—did not differ from the earlier designation in "important respects." *Id.* (quoting *Hesai*, 792 F. Supp. 3d at 31).

As an initial matter, Defendants acknowledge that the D.C. Circuit's panel decision in *Hesai II* informs the resolution of certain issues inherent to Plaintiff's due-process claims in this litigation. *Hesai II* held, in relevant part, that the company—a Section 1260H designee—"satisfie[d] the stigma-plus test" because it was "depriv[ed] of liberty" by "being excluded from opportunities available to other non-designated companies." *Id.* at 878–79 (quoting *Trifax Corp. v. District of Columbia*, 314 F.3d 641, 643 (D.C. Cir. 2003)). The panel further held that the company was not accorded sufficient due process because "the Secretary redesignated [the entity] without providing [it] the unclassified materials on which he intended to rely or an opportunity to respond before finalizing the decision." *Id.* at 880.

Moreover, the Court held, there was no basis to determine that any procedural error was harmless, because the "agency's 'utter failure to comply' with required procedures 'cannot be considered harmless if there is any uncertainty at all as to the effect of that failure,' " and the Court found that the company was "unable to *respond* to the unclassified evidence the Secretary intended to rely upon and tailor its arguments accordingly, before the Secretary made a final decision." *Id.* at 881 (quoting *Sprint Corp. v. FCC*, 315 F.3d 369, 376 (D.C. Cir. 2003)). The Court made that

determination, in part, because the "final decision differed from the original designation 'in important respects,' " *id.* (quoting *Hesai*, 792 F. Supp. 3d at 31), such as the Department's finding that Hesai satisfied "four—rather than one—of the definitions of 'military-civil fusion contributor' " under Section 1260H(d)(2). *Hesai*, 792 F. Supp. 3d at 31. The Department there reiterated its conclusion that Hesai was "affiliated with" MIIT, but it also determined that Hesai knowingly receives assistance from the Government of China; resides in or is affiliated with a military-civil fusion enterprise zone; and advertises on national, provincial, and non-governmental military equipment procurement platforms in China. *See id.* In addition, the Department made two new "independent findings" that the entity was a civil-military fusion contributor and that it "contributes 'to the Chinese defense industrial base.' " *Id.* (citation omitted).

Here, to the extent that any procedural error occurred, it was harmless.

The D.C. Circuit's opinion in *Hesai II* does not require any different outcome. Unlike the Department's designation of Hesai, the designation of Quectel was not so distinct. As Plaintiff's counsel explained in its pre-June communications to the Department on Quectel's behalf, the Department's *previous* designation—which relied on a finding that Quectel was "affiliated with" MIIT due, in part, to its participation in "testing cooperation and standard formulation." AR 73–74—did not, in Plaintiff's view, qualify as sufficiently close with MIIT to be "affiliated" under Section 1260H. The Department's June 2026 designation made exactly the same designation under the same logic: that Quectel is "affiliated with MIIT" because of its work in developing "multiple national standards under the authority of MIIT." AR 59.

To be sure, here, as there, the Department's re-designation of Quectel "add[ed] several bases and evidence to justify the listing." *Hesai II*, 186 F.4th at 881 (quoting *Hesai*, 792 F. Supp. 3d at 31). The Department's "new information" here, AR 59, included evidence about Quectel's

involvement in drafting hands-free calling technological standards, *see* AR 60, 5G standards, *see* AR 61, and an in-vehicle wireless technological standard, *see id.* But the core of the finding—that Quectel collaborated with MIIT to develop national technological standards—relies on exactly the same degree of affiliation with MIIT at issue in the Department's earlier designation. And Quectel's arguments against designation—which focused on the degree of closeness in the purportedly "tenuous" connection between MIIT and Quectel, AR 75 (explaining that the designation would sweep in "companies participating from around the world")—track the arguments the company advances here to challenge its June 2026 designation, *see* ECF No. 15 at 20–23 (arguing that the current designation fails to show a sufficiently "close relationship" and would sweep in many other "drafting units," including large numbers of companies from around the world). In short: Quectel was on notice well before June 2026 of the nature of the Department's evidence that it maintains multiple affiliations with MIIT. And it had an opportunity to present its arguments that participating in the development of national standards is insufficient to qualify as an affiliation with the meaning of Section 1260H. That fact means that Plaintiff cannot show any procedural error in designating the entity constitutes reversible error. Indeed, Plaintiff fails to provide *any* evidence that the Department's designation would have been different. To the contrary: Quectel affirmatively argues that it did, in fact, "*repeatedly share[]*" evidence that, it says, undermined the original designation based on an affiliation with MIIT. ECF No. 15 at 17. It makes no mention of what additional process it might have received that would have resulted in a different outcome under the June 2026 designation. Without showing that the purported lack of process "affect[ed] the outcome," relief is unwarranted. *PDK Lab'ys*, 362 F.3d at 799.

In sum, Plaintiff has not suffered any prejudice from any alleged deprivation of procedural rights because the company presented its arguments regarding its affiliation with MIIT with respect

to its participation in drafting national standards to the Department over the course of many months preceding the June 2026 designation. Because the challenged decision was not different in "important respects," *Hesai II*, 186 F.4th at 881 (citation omitted), "the agency's mistake did not affect the outcome," *PDK Lab'ys*, 362 F.3d at 799. And if the decision "did not prejudice the petitioner, it would be senseless to vacate and remand for reconsideration." *Id.* Plaintiff has failed to satisfy its "burden to demonstrate prejudicial error." *Jicarilla Apache Nation v. U.S. Dep't of the Interior*, 613 F.3d 1112, 1121 (D.C. Cir. 2010). Plaintiff's due-process claim thus fails.

**III. Defendants' Designation Was Not *Ultra Vires*.**

Plaintiff superficially argues that Defendants' actions were *ultra vires* and in excess of their statutory authority under Section 1260H. *See* ECF No. 15 at 31. In doing so, though, Plaintiff merely repackages its earlier claims that Quectel's designation is "unsupported by substantial evidence" and that the Department's designation is contrary to law. *See id.* (noting its *ultra vires* claim rests on arguments "[a]s described above").

The claim fails at the outset. To succeed here, a plaintiff must show more than that Defendants violated the law. *See Bd. of Governors of Fed. Rsrv. Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 43 (1991) (noting that *Leedom v. Kyne*, 358 U.S. 184 (1958), does not authorize *ultra vires* "judicial review of any agency action that is alleged to have exceeded the agency's statutory authority"); *see also Changji Esquel Textile Co. v. Raimondo*, 40 F.4th 716, 722 (D.C. Cir. 2022) (citing *MCorp*, 502 U.S. at 43). It must show that judicial review of the agency action is impliedly—not expressly—precluded, that "there is no alternative procedure for review of the statutory claim," and that "the agency plainly act[ed] in excess of its delegated powers and contrary to a specific prohibition in the statute that is clear and mandatory." *Changji*, 40 F.4th at 722 (citation omitted). "The third requirement is especially demanding." *Id.* An agency "violates a 'clear and mandatory' statutory command only when the error is 'so extreme that one may view it

as jurisdictional or nearly so.' " *Id.* (citation omitted). Plaintiff fails to point to any clear, mandatory, or unambiguous statutory directive that Defendants violated. *See* ECF No. 13 ¶¶ 173–75; ECF No. 15 at 31. Its "Hail Mary pass," *Changji*, 40 F.4th at 722 (citation omitted), thus fails.

**IV. Section 1260H Clearly Specifies Prohibited Conduct and Is Not Vague.**

Plaintiff's final argument challenges Section 1260H as unconstitutionally vague. *See* ECF No. 15 at 38–39. Plaintiff raises an as-applied challenge, arguing that the phrase "affiliated" fails to provide "meaningful guidance as to what conduct suffices to establish affiliation." *Id.* at 39.

A provision may be unconstitutionally vague where it fails to give a "person of ordinary intelligence a reasonable opportunity to know what is prohibited." *NAACP v. U.S. Dep't of Educ.*, 779 F. Supp. 3d 53, 65–66 (D.D.C. 2025) (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972)). The key inquiry is whether the relevant terms are "clearly defined." *Grayned*, 408 U.S. at 108. Importantly, "a statute's vagueness is either susceptible to judicial construction or is void for vagueness based on the application of traditional rules for statutory interpretation." *United States v. Bronstein*, 849 F.3d 1101, 1106 (D.C. Cir. 2017). A provision "is not rendered unconstitutionally vague" simply because it may not "mean the same thing to all people, all the time, everywhere." *Id.* at 1107 (citation omitted). Instead, it transgresses constitutional bounds only if, "applying the rules for interpreting legal texts," it specifies "no standard of conduct . . . at all." *Id.* (alteration in original) (quoting *Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971)).

The plain meaning of the challenged phrase wholly defeats Plaintiff's claim. Indeed, Congress specifically defined the phrase "affiliated with"—under Section 1260H, it means "in close formal or informal association." § 1260H(g)(1), 138 Stat. at 2124. And courts have had no trouble applying that definition in the Section 1260H context. This Court in *DJI* applied the statutory definition in a case that considered both the pre- and post-amendment statute, noting that the term "should be interpreted broadly and requires some 'close' relationship." 2025 WL

2761210, at *12 (citation omitted). Further underscoring that the term is susceptible to the standard tools of statutory interpretation is the fact that earlier (pre-Section 1260H) cases took a narrower view of the same phrase in a predecessor statute.

In *Luokung Technology Corp. v. Department of Defense*, Judge Contreras rejected the government's argument that the phrase—as enacted in § 1237, the pre-Section 1260H scheme—meant any entity with "a common purpose" or "shared characteristics," finding instead that the term meant "a company effectively controlled by another or associated with others under common ownership or control." 538 F. Supp. 3d 174, 183–88 (D.D.C. 2021) (citations omitted). In that case, the plaintiff made a policy argument that the broad definition would "have almost no limiting princip[le]," suggesting that Congress could not have "intended to provide the Department of Defense" with such discretion. *Id.* at 187.

The problem for Plaintiff is that Congress later amended Section 1260H to provide an explicit definition for the phrase and to make clear that it *did* intend the term to be interpreted broadly and independently of whether any control relationship exists. *See* § 1260H(g)(1), 138 Stat. at 2124. That amendment itself provides important evidence as to the scope of the statutory definition and the corresponding specified standard of conduct—*i.e.*, that it should be "interpreted broadly." *DJI*, 2025 WL 2761210, at *12. And the questions of whether one entity has an "association" that is some way "close" is readily susceptible to judicial review through the application of the traditional rules of statutory interpretation. *See Woodhull Freedom Found. v. United States*, 72 F.4th 1286, 1305 (D.C. Cir. 2023) ("[T]he fact that a statutory . . . question may be difficult or unresolved does not make the law unconstitutionally vague."); *see also Association*, Black's Law Dictionary (12th ed. 2024) ("A gathering of people for a common purpose; the persons so joined."); *Close*, Merriam-Webster, https://www.merriam-

webster.com/dictionary/close ("[B]eing near in time, space, effect, or degree."). Moreover, Plaintiff's own authority suggests that the use of a specific definition—thus providing a court sufficient context to determine the boundaries of the conduct prohibited under the statute—cures constitutional vagueness concerns. *See Humanitarian L. Project v. U.S. Dep't of Treasury*, 484 F. Supp. 2d 1099, 1106–07 (C.D. Cal. 2007), *aff'd*, 578 F.3d 1133 (9th Cir. 2009). Congress did just that here. And the broad definition it adopted serves to provide a standard of conduct for courts to apply to the Department's determinations here. *See DJI*, 2025 WL 2761210, at *12–16.

## V. Should There Be Error, Remand Without Vacatur Is the Appropriate Remedy.

Plaintiff finally argues that, under the APA, the Court should vacate the Department's designation of Quectel as a Chinese military company. *See* ECF No. 15 at 40. Indeed, "vacatur is the normal remedy." *Bridgeport Hosp. v. Becerra*, 108 F.4th 882, 890 (D.C. Cir. 2024) (quoting *Allina Health Servs. v. Sebelius*, 746 F.3d 1102, 1110 (D.C. Cir. 2014)). But an important exception comes into play where an "agency's error is 'curable.' " *Id.* (quoting *U.S. Sugar Corp. v. EPA*, 844 F.3d 268, 270 (D.C. Cir. 2016)). And at least two of Plaintiff's alleged errors here—its APA arbitrary-and-capricious and procedural-due-process claims—constitute exactly the kinds of "curable" errors this Court and the D.C. Circuit generally conclude are better served by remanding without vacatur. *Id.* (citation omitted).

Indeed, *Hesai* sets out the preferred and binding path in determining the proper remedy for a procedural-due-process error under Section 1260H. In that case, a panel of the D.C. Circuit pointed to previous opinions in which it, "despite finding due process violations," "declined to vacate the designations at issue while the government cured those violations" because of the "realities of the foreign policy and national security concerns asserted by the Secretary in support of those designations." *Hesai II*, 186 F.4th at 881 (quoting *Nat'l Council of Resistance of Iran v. Dep't of State*, 251 F.3d 192, 209 (D.C. Cir. 2001)). And the Circuit "remand[ed] without vacating

the 2024 designation" of the entity there. *Id.* at 882. The same course binds the Court here, should it conclude that any due-process error merits relief in this litigation.

The same logic applies to any conclusion that the Department's basis for designating Quectel was arbitrary and capricious. *See Bridgeport Hosp.*, 108 F.4th at 890; *Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*, 988 F.2d 146, 151 (D.C. Cir. 1993) (explaining that, because of the "possibility" that the agency "may be able to justify" its action, remand without vacatur was the appropriate remedy). To the extent any factual finding made by the agency was inadequately explained or supported, the Court should remand without vacatur for the agency to "develop a reasoned explanation" for its action here. *Allied-Signal*, 988 F.2d at 151.

## CONCLUSION

For the reasons stated above, the Court should deny Plaintiff's motion for summary judgment (ECF No. 15) and grant Defendants' motion for summary judgment.

Dated: October 9, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General, Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General

KRISTINA A. WOLFE
Assistant Branch Director

*<u>/s/ William S. Jankowski</u>*
WILLIAM S. JANKOWSKI
D.C. Bar No. 90021524
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20530
(202) 353-7578
william.s.jankowski@usdoj.gov

*Counsel for Defendants*